UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SANDRA STEVANOVIC,

Plaintiff,

-Against-

GEORGIA PAIN AND SPINE INSTITUTE, PC., GEORGIA SPINE AND TRAUMA CARE, LLC, and DAVID WEBB,

Defendants.

**COMPLAINT**

Plaintiff SANDRA STEVANOVIC, by and through her attorneys, alleges upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action against Defendants GEORGIA PAIN AND SPINE INSTITUTE, PC., GEORGIA SPINE AND TRAUMA CARE, LLC, and DAVID WEBB ("Defendants") to remedy violations of the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 et seq. ("FLSA"). Plaintiff seeks declaratory and injunctive relief, unpaid overtime wages, liquidated damages, attorneys' fees, and all other appropriate legal and equitable relief, pursuant to 29 U.S.C. §§ 216(b) and 217, and other applicable federal law.

2. Plaintiff also brings this action to remedy violations of the New York State Labor Law ("NYLL"), including NYLL §§ 190 et seq., §§ 650 et seq., and 12 NYCRR § 142-2.2. Pursuant to the NYLL, Plaintiff seeks declaratory and injunctive relief, unpaid wages, unpaid

overtime, reasonable attorneys' fees, liquidated damages, statutory penalties, statutory interest, and all other appropriate legal and equitable relief, pursuant to the NYLL §§ 198, 663.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court over Plaintiff's FLSA claims is invoked pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

3. Jurisdiction of this Court over Plaintiff's NYLL claims is invoked pursuant to 28 U.S.C. § 1367(a) in that the NYLL claims are so related to Plaintiff's FLSA claims as to form the same case or controversy under Article III of the United States Constitution.

4. Venue is proper within this District, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred within this District.

5. Specifically, Defendants employed Plaintiff, and Plaintiff worked for Defendants – on a full-time basis for almost thirty (30) months – out of a home office based in this District, specifically Queens, New York.

## PARTIES

6. Plaintiff SANDRA STEVANOVIC resides in Queens County in the State of New York.

7. At all relevant times, Plaintiff was employed by Defendants as described herein.

8. Plaintiff consents in writing to be a party to this action pursuant to 29 U.S.C. §216(b). Plaintiff's written consent is attached hereto as Exhibit "A" and incorporated herein.

9. Defendant GEORGIA PAIN AND SPINE INSTITUTE, PC. is a Professional Corporation incorporated in the State of Georgia.

10. Defendant GEORGIA PAIN AND SPINE INSTITUTE, PC's principal office address is 2784 N. Decatur Road, Ste 120, DECATUR, GA, 30033 and its registered agent is Defendant DAVID WEBB.

11. Defendant GEORGIA SPINE AND TRAUMA CARE, LLC is a Limited Liability Company formed and registered in the State of Georgia.

12. Defendant GEORGIA SPINE AND TRAUMA CARE, LLC's principal office address is 2784 N. Decatur Road, Ste 120, DECATUR, GA, 30033.

13. Defendant GEORGIA SPINE AND TRAUMA CARE, LLC's registered agent is Nathan Powell, with an address of 10 Lumpkin Street, Lawrenceville, GA, 30046.

14. Defendants GEORGIA PAIN AND SPINE INSTITUTE, PC. and GEORGIA SPINE AND TRAUMA CARE, LLC collectively grossed more than $500,000 in each of the last three calendar years.

6. Defendant DAVID WEBB ("Dr. Webb") is an owner and Chief Executive Officer of Defendants GEORGIA PAIN AND SPINE INSTITUTE, PC. and GEORGIA SPINE AND TRAUMA CARE, LLC.

7. In his capacity as an owner and Chief Executive Officer of Defendants GEORGIA PAIN AND SPINE INSTITUTE, PC. and GEORGIA SPINE AND TRAUMA CARE, LLC, Dr. Webb has, and at all relevant times had and exercised the power to hire, fire, and control the wages and working conditions of Plaintiff and other employees of Defendants.

8. At all times relevant hereto, Defendants GEORGIA PAIN AND SPINE INSTITUTE, PC. and GEORGIA SPINE AND TRAUMA CARE, LLC and Dr. Webb have been, jointly, an "enterprise engaged in commerce or in the production of goods for commerce," within the meaning of 29 U.S.C. § 203 and 29 U.S.C. § 207(a)(1).

9. At all times relevant hereto, Plaintiff was employed by Defendants' enterprise which was at all times relevant hereto engaged in commerce or the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved

in or been produced for commerce within the meaning of § 3(b), (g), (i), (j) (r) and (s)(A)(i) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r), & (s)(A)(i).

10. At all times relevant hereto, Defendants GEORGIA PAIN AND SPINE INSTITUTE, PC. and GEORGIA SPINE AND TRAUMA CARE, LLC and Dr. Webb have been, and continue to be, an "employer" as defined by 29 U.S.C. § 203(D) and by the NYLL §190(3).

11. Defendants GEORGIA PAIN AND SPINE INSTITUTE, PC. and GEORGIA SPINE AND TRAUMA CARE, LLC and Dr. Webb are collectively referred to herein as "Defendants".

## FACTUAL ALLEGATIONS

### Background

15. Defendants operate a medical practice in the State of Georgia offering what they claim is "state-of-the-art interventional pain management for patients with chronic and cancer-related pain as well pain that is the result of personal injury".[1]

16. Defendants operate two offices "located in Decatur and Stockbridge serving DeKalb County, Henry County and surrounding areas".[2]

17. After previously working for Defendants for about four (4) weeks through a virtual staffing company, on or about January 15, 2024, Defendants – specifically Dr. Webb – hired Plaintiff directly to work as an "office administrator" and as an "executive assistant" for Defendants and Dr. Webb.

18. Plaintiff worked for Defendants and Dr. Webb on a full-time basis from January 15, 2024, until Dr. Webb stopped communicating with her, and effectively terminated her employment on or about May 29, 2026.

---

[1] https://www.gapainandspine.com (accessed 9-18-2026).

[2] https://www.gapainandspine.com/pain-management-locations.php (accessed 9-18-2026).

19. During this almost thirty (30) month period, Plaintiff worked exclusively for Defendants.

20. Defendants set Plaintiff's schedule and hours of work. Dr. Webb wanted Plaintiff to work during Defendants' clinic hours, which started at 7:30 AM and continued to 4:30 PM each day Monday through Friday, and he regularly directed Plaintiff to call him shortly before 7:30 AM each day to go over "the plan" for the day and to address any necessary issues.

21. Dr. Webb also regularly told Plaintiff to schedule practice-related meetings outside of clinic hours – usually after 4:30 PM – so he could be available to attend them.

22. Dr. Webb made it mandatory that Plaintiff attend all meetings in which he participated, for purposes of note/record keeping.

23. Defendants required that Plaintiff undergo training for using their systems/programs. They gave her directions on how to manage their practice and what answers to give to various vendors. Dr. Webb did not want to have to deal with vendors or others – he appointed Plaintiff to handle all answers and communications with his staff and vendors.

24. Plaintiff did not have an opportunity to make any profits from Defendants' business – she was only entitled to her wages.

**Plaintiff's Job Duties**

25. Plaintiff's responsibilities as "office administrator" and "executive assistant" for Defendants and Dr. Webb included, but were not limited to, the following: (i) reviewing and responding to business/work emails, (ii) handling accounts payables and paying bills and invoices, (iii) scheduling Zoom meetings for Dr. Webb, and attending them and keeping notes of same, (iv) handling insurance proposals and requests and providing required paperwork, (v) helping to find candidates for Defendants to hire, including creating and posting advertisements to hire staff and scheduling interviews and helping to interview them, (vi) handling various

clerical Human Resources duties including onboarding new staff, filling out various staffing and other office forms, scheduling/sick days/time off requests for staff members and entering data into payroll platforms, (vii) managing the practice's phone lines and voicemails including handling call overflow, (viii) communicating with Defendants' landlord and dealing with building issues including leaks, HVAC issues, and upgrades, (ix) helping set up Defendants' new practice location (Stockbridge) including its phone systems, programs, credit card machines, fish tank and setting up maintenance for same, (x) overseeing Defendants' social media postings and accounts, including advertisements and providing material and videos for same, (xi) communicating with Defendants' bookkeeper and accountant and other professionals/support staff and providing requested documents and information, (xii) scheduling fire inspections and maintaining up-to-date records, (xiii) helping oversee virtual data entry people from the Philippines that handled patient data transfer from Defendants' old system to their new system, (xiv) submitting business license renewals and related paperwork for multiple businesses owned by Defendants, (xv) handling correspondence and making payments for various events Dr. Webb attended, (xvi) scheduling inspections and maintenance of c-arm machines for both practice locations, and (xvii) scheduling and attending staff training on practice software programs – in addition to various other duties and responsibilities assigned to her by Defendants.

26. What follows is one text message – sent by Dr. Webb to his key group of employees, including Plaintiff – of the kind normally sent by Dr. Webb in which he ordered Plaintiff to obtain "five" potential staff members "by the end of the day", along with a "list of the current bills placed on an excel spreadsheet…" and reminded Plaintiff not to "forget payroll":




27. Defendants and Dr. Webb closely supervised Plaintiff. Plaintiff had to follow Dr. Webb's orders, be immediately responsive to him whenever he wanted, and she had to run all important decisions by Dr. Webb for his approval.

28. Defendants were legally required to pay Plaintiff as a non-exempt hourly employee because they assigned her to perform production work that was integral to their business without giving her the discretion to make decisions of importance to the business.

29. Further, Plaintiff did not manage any employees.

30. Plaintiff was not an exempt employee under the FLSA and the NYLL and, at all times relevant hereto, was entitled to be paid overtime for all hours worked in excess of 40 per week.

**Plaintiff was Paid on a Flat Weekly Salary for 40-Hours Per Week**

31. During her time working for Defendant through the staffing company, Defendants paid Plaintiff – through the staffing company – on an hourly basis.

32. However, when they hired Plaintiff directly, Defendants changed Plaintiff's method of pay and told Plaintiff that they would be paying her a weekly salary of $1,000 per week for what was supposed to be a 40-hour work week.

33. The $1,000 per week was specifically agreed upon by Plaintiff and Dr. Webb because it was based on an hourly rate of $25 per hour, for 40 hours of work.

34. Throughout 2024 and through the middle of 2025, Defendants continued to pay Plaintiff at the rate of $1,000 per week.

35. In or about the middle of 2025, Defendants unilaterally lowered Plaintiff's salary to a flat weekly salary of $750.00 per week.

36. At all times throughout her employment with Defendants, Plaintiff was paid weekly amounts that were less than the NYLL's minimum weekly salary for overtime exempt administrative and executive (excluding professional) employees.[3]

[3] As of January 1, 2024, the state minimum for employees who work in New York City (for any size employer) was $1,200.00 per week. The state minimums were raised to $1,237.50 per week

**Plaintiff's Hours of Work**

37. Instead of working the 40-hours that she was supposed to work, shortly after her hiring and continuing throughout her employment with Defendants, Defendants gave Plaintiff so much work that she regularly worked well over forty (40) hours per week for Defendants without being paid (a) all the wages she was owed for all hours worked, and (b) overtime premiums for all hours she worked in excess of 40 per week.

38. Defendants' regular clinic hours were from 7:30 AM to 4:30 PM, Monday through Friday, each week.

39. Plaintiff regularly worked for Defendants – performing the above-referenced duties – throughout Defendants' regular clinic hours, that is from 7:30 AM to 4:30 PM, Monday through Friday, each week.

40. As set forth above, Dr. Webb often required Plaintiff to call him prior to the start of Defendants' clinic hours, at 7:15 or 7:20 AM each day.

41. In addition to working prior to and throughout Defendants' regular clinic hours, Plaintiff regularly worked an extra three (3) or four (4) hours per day, on average, until between 7:00 or 8:00 or 8:30 PM, or later, because of her heavy workload.

42. Thus, despite Plaintiff only being scheduled to work for eight hours per day, she regularly worked twelve (12) or thirteen (13) hour workdays, or longer, throughout her employment with Defendants.

43. Due to her heavy workload, Plaintiff regularly worked through her lunch/meal breaks and did not normally take uninterrupted meal breaks of at least 30 minutes each day. Plaintiff's best recollection is that she worked through lunch breaks three to four days per week.

---

($64,350 per year) effective January 1, 2025 and to $1,275 per week ($66,300 per year) effective January 1, 2026. NYCRR § 142-2.14.

44. Defendants knew that Plaintiff was working heavy hours – many more than her agreed upon/scheduled hours – because Dr. Webb either assigned Plaintiff to perform many of her after-hours tasks or was included in them.

45. By way of example, below is a screenshot of a 9/3/2025 meeting that took place from 6:00 to 7:00 PM with Plaintiff, Dr. Webb and others concerning billing and credentialing:



46. Below is a screenshot of a 12/10/2025 meeting that took place from 6:20 to 7:20 PM with Plaintiff, Dr. Webb and others concerning "billing":




47. Below is a screenshot of a 1/27/2026 "year review" meeting that took place from 6:45 to 7:45 PM with Plaintiff, Dr. Webb and others:




48. Dr. Webb also gave Plaintiff work assignments at all hours of the day, as illustrated by the following text message in which he ordered her – at 7:34 PM on a Friday evening – to immediately obtain payment information because he needed "to make a payment before I leave":




49. In addition to working heavy hours Monday through Friday, Plaintiff also regularly worked on weekends, especially on Saturdays, when Dr. Webb called Plaintiff for various tasks or assignments. He often held phone staff meetings on Saturday – which Plaintiff was required to be in attendance for – as well as meeting by phone with Plaintiff to discuss

various issues including about staff, HR work, updates/changes to policies, new hires, payments required, staff mishaps/mistakes and other issues that needed to be addressed in the office. These calls often exceeded one or two hours. Plaintiff estimates that she worked on average about 4 hours per weekend.

50. Despite Plaintiff regularly working many hours more than forty (40) per workweek, Defendants' refused to pay her any overtime premiums.

51. Instead, Defendants improperly classified Plaintiff as a "contractor" – <u>failing to pay her at all</u> for the many hours of overtime they required her to work.

52. Defendants failed to keep accurate and sufficient time records for Plaintiff as required by Federal and State laws.

53. In addition to not paying Plaintiff any overtime premiums – as outlined above - Defendants often failed to pay Plaintiff all or part of her weekly salary.

54. Because she was such a loyal employee of Defendants – and because she always offered to help Defendants' company – Plaintiff continued working for Defendants, despite them not paying all of her weekly salary.

55. Defendants tried to excuse their non-payment of all of Plaintiff's salary on insurance issues or delays in receiving payment – but that was not true because their insurance issues/delays were resolved by the beginning of 2025.

56. On Friday July 3, 2026, shortly after she was terminated, Plaintiff sent an email demand to Dr. Webb demanding "immediate payment" of her "overdue wages", which she calculated at $62,000, broken down as $34,000 from 2024, $20,000 from 2025 and $8,000 from 2026.

57. Defendants and Dr. Webb never replied to Plaintiff's July 3rd email demanding payment of her unpaid wages.

58. Defendants willfully failed to pay Plaintiff wages for (i) all hours and shifts that she worked for Defendants, and (ii) at the rate of one and one half times her regular hourly rate of pay for all hours she worked in excess of forty (40) in a workweek.

59. Defendants are aware or should have been aware that federal and state laws required Defendants to pay Plaintiff for (i) all hours and shifts that she worked for Defendants, and (ii) at the rate of one and one half times her regular hourly rate of pay for all hours she worked in excess of forty (40) in a workweek.

60. Defendants violated NYLL § 195(4) by failing to establish, maintain and preserve, for not less than six (6) years, sufficiently detailed payroll records showing among other things, the hours worked, gross wages, deductions and net wages of Plaintiff.

61. Defendants' record keeping and notice violations prevented Plaintiff from knowing her legal rights and from figuring out exactly how many hours she was not compensated for.

62. Upon information and belief, Defendants knew of, and/or showed reckless disregard for, the practices by which Plaintiff was not paid for (i) all hours and shifts that she worked for Defendants, and (ii) at the rate of one and one half times her regular hourly rate of pay for all hours she worked in excess of forty (40) in a workweek.

63. Upon information and belief, Defendants knew that the nonpayment of her wages owed and overtime premiums would economically injure Plaintiff and that nonpayment violated the FLSA and the NYLL.

64. Defendants committed the foregoing acts knowingly, intentionally and willfully against the Plaintiff.

## FIRST CAUSE OF ACTION
## (Failure to Pay Overtime Wages – FLSA)

65. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if they were set forth herein.

66. Defendants were required to properly pay Plaintiff overtime wages at the rate of one and one-half times her regular hourly rate for all hours worked in excess of forty (40) hours in a workweek.

67. Defendants violated the FLSA by developing a standard business practice of failing to pay overtime premiums to Plaintiff and thereby violating the overtime requirements of the FLSA.

68. Defendants have willfully and intentionally engaged in a widespread pattern and practice of violating provisions of the FLSA by failing to pay Plaintiff for all hours worked and failing to pay Plaintiff overtime at not less than one and one-half times her regular rate of pay for all hours worked in excess of forty (40) in a workweek. Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. § 207(a)(1) and (e) and § 215(a).

69. As a result of Defendants' violations of the FLSA, Plaintiff has suffered damages by being denied overtime wages in amounts to be determined at trial and is entitled to recovery of such amounts, an equal additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, costs, and punitive damages pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**(Failure to Pay Wages and Overtime Wages – NYLL)**

70. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if they were set forth herein.

71. During her employment with Defendants, Plaintiff was an "employee" within the meaning of N.Y. Lab. Law § 190(2), and N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14.

72. During Plaintiff's employment with Defendants, Defendants were employers within the meaning of N.Y. Lab. Law § 650(6).

73. Defendants failed to pay Plaintiff all wages owed to her for all shifts and hours worked and overtime wages of not less than one and one-half times her regularly hour rate for each hour worked in excess of forty hours in a workweek in violation of the N.Y. Lab. Law, Article 19, §650, *et seq.*, and N.Y. Comp. Codes R. & Regs. tit. 12, §142-2.2.

74. Defendants willfully, regularly, repeatedly, and knowingly failed to pay Plaintiff for all hours worked and for all of the overtime hours worked at the required overtime rates for hours worked in excess of forty (40) hours per workweek.

75. Defendants willfully, regularly, repeatedly, and knowingly failed to pay Plaintiff all wages owed to her for all hours worked and overtime wages of not less than one and one-half times her regularly hour rate for each hour worked in excess of forty hours in a workweek in violation of the NYLL.

76. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff has sustained damages, including loss of earnings, in an amount to be established at trial.

77. Plaintiff seeks damages in the amount of her unpaid wages, unpaid overtime compensation, liquidated damages, pre-judgment interest at the statutory rate, attorneys' fees and costs, pursuant to the NYLL, and such other legal and equitable relief as this Court deems just and proper, including pre-judgment and post-judgment interest.

**THIRD CAUSE OF ACTION**
**(NYLL §§ 195 (1) and (3) -Failure to Provide Notices & Wage Statements)**

78. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if they were set forth herein.

79. Defendants have willfully failed to supply Plaintiff with the notices required by NYLL § 195(1), containing Plaintiff's rate or rates of pay and the bases thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

80. Defendants have also willfully failed to supply Plaintiff with accurate statements of wages as required by NYLL § 195(3), containing the dates of work covered by that payment of wages; the name of the employee; the name of the employer; the address and phone number of the employer; rate or rates of pay and bases thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

81. Defendants violated NYLL **§** 195(1) and (3) and consequently owe Plaintiff statutory damages as specified by NYLL § 198(1-b) and (1-d).

82. Plaintiff seeks statutory damages as specified by NYLL § 198(1-b) and (1-d), reasonable attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief as follows:

(a) A finding that Plaintiff was misclassified as a "contractor" and that in fact she was an employee, and that Defendants were her employer, subject to the provisions of the FLSA and NYLL;

(b) An award of damages, according to proof, to Plaintiff including FLSA liquidated damages, and interest, to be paid by Defendants;

(c) An award of damages to Plaintiff for violations of the NYLL, including statutory damages and NYLL liquidated damages;

(d) Costs of action incurred herein, including expert fees;

(e) Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. §§ 663, 198 and other applicable statutes;

(f) Pre-Judgment and post-judgment interest, as provided by law; and

(g) Such other and further legal and equitable relief as this Court deems necessary, just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action and claims with respect to which she has a right to a jury trial.

Dated: October 7, 2026

Respectfully submitted,

HARRISON, HARRISON & ASSOCIATES

David Harrison

David Harrison, Esq.
110 State Highway 35, Suite #10
Red Bank, NJ 07701
(718) 799-9111 Phone
dharrison@nynjemploymentlaw.com
*Attorneys for Plaintiff*

# Exhibit "A"

I am a current or former employee of Georgia Pain and Spine Institute PC, and David Webb and related entities/ individuals. I hereby consent and agree to be a party Plaintiff in this Action to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. 216(b).

I hereby designate Harrison, Harrison & Associates, Ltd. to represent me in this Action and I also consent and agree, if such is necessary, to file this claim on behalf of all others similarly situated.

Dated: 07/10/2026

[signature]

Signature

Sandra Stevanovic

Full Legal Name (print)